**In the Matter of Tyrone Alton MOORE, Debtor.**

**Bankruptcy No. 83–50820–Mac.**

United States Bankruptcy Court, M.D. Georgia, Macon Division.

Jan. 10, 1984.

---

Danny L. Akin, Dozier & Edwards, Macon, Ga., for applicant.

Camille Hope, Macon, Ga., Trustee.

## MEMORANDUM OPINION ON APPLICATION FOR ATTORNEY'S FEES

ROBERT F. HERSHNER, Jr., Bankruptcy Judge.

### STATEMENT OF THE CASE

Before the Court is the attorney fee application of L. Zack Dozier, counsel for Debtor in this Chapter 13 case. The application was considered at the confirmation hearing on Debtor's plan, and the Court requested that Mr. Dozier file a time itemization with the Court in support of the application. The itemization was filed with the Court on November 7, 1983, and was supported by Mr. Dozier's letter brief. This Court's standing Chapter 13 trustee filed her letter brief on December 13, 1983, in response to Mr. Dozier's letter brief.

After consideration of the evidence and the briefs, the Court has this day entered an order allowing $1,600.00 as attorney's fees in this case. In support of its order, the Court publishes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Mr. Dozier is the counsel of record for Tyrone Alton Moore, Debtor, and Danny L. Akin is an associate of Mr. Dozier's. Debtor's Chapter 13 case was filed with the Court on August 12, 1983, and Debtor's Chapter 13 plan was confirmed by the Court on November 3, 1983.

At the hearing on confirmation, counsel for Debtor made an application for $5,000.00 in attorney's fees. The application was subsequently supported by an itemized statement showing the attorney services rendered and the time spent on those services. This itemization is as follows:

| | | | |
|---|---|---|---|
| LZD | 08/11/83 | Conference with Mr. Moore concerning financial problems and feasibility of filing Chapter 13 | 2.5 Hours |
| LZD | 08/24/83 | Long distance telephone call to Mr. Moore concerning plan; Work on plan and schedules | 2.0 Hours |
| LZD | 09/26/83 | Long distance telephone call to Mr. Moore; Telephone conference with Little River – Creditor | .4 Hours |
| LZD | 09/06/83 | Long distance telephone conference with Mack Financial – Mr. Spazonnie | .2 Hours |
| LZD | 09/06/83 | Dictate letter to Mr. Spazonnie | .2 Hours |
| LZD & DLA | 09/27/83 | 341(a) Meeting of Creditors | .5 Hours |
| DLA | 09/28/83 | Long distance telephone call to David Waddell regarding skidder and call from Gene Hatcher | .4 Hours |
| DLA | 10/02/83 | Long distance telephone call to Mr. Moore | .3 Hours |
| DLA | 10/04/83 | Telephone call from Fred Hodges regarding Farmers & Merchants Bank claim | .1 Hours |
| DLA | 10/04/83 | 2 long distance telephone calls to Bank of Eastman and attorney in Newnan regarding release of bank account | .2 Hours |
| DLA | 10/04/83 | Telephone call to Trustee's office | .1 Hours |
| LZD | 10/04/83 | Telephone conference with Jack Camp – Bank's attorney regarding necessity of releasing bank account | .2 Hours |
| DLA | 10/04/83 | Telephone conference with Jack Camp regarding bank account | .1 Hours |
| DLA | 10/05/83 | Telephone conference with Fred Hodges regarding o.k. to run Bank of Gray check through | .1 Hours |
| DLA | 10/05/83 | Long distance telephone conference with Mr. Moore regarding sale of truck | .2 Hours |
| DLA | 10/12/83 | Telephone conference with Mr. Moore regarding releasing equipment to creditor | .2 Hours |
| DLA | 10/12/83 | Telephone conference with Ward Stone regarding release of Mack truck to Mr. Moore | .1 Hours |
| DLA | 10/12/83 | Telephone conference with Jack Camp regarding release of '64 International and Chevrolet pickup | .1 Hours |
| DLA | 10/12/83 | Telehphone conference with Ward Stone regarding release of collateral in satisfaction of debt | .1 Hours |
| DLA | 10/24/83 | Telephone conference with Randy Connell – Farmers & Merchants Bank – regarding release of collateral | .3 Hours |
| DLA | 10/24/83 | 2 telephone conferences with Bill Flatau, 2 telephone conferences with Mr. Moore regarding release of skidder on Little River claim | .2 Hours |
| DLA | 10/26/83 | Telephone conference with Gene Hatcher regarding payment to Tidewater Equipment | .1 Hours |
| DLA | 10/26/83 | Conference with Bill Flatau regarding release of skidder and trailer | .1 Hours |
| DLA | 10/27/83 | Conference with Trustee regarding turnover of equipment to Farmers & Merchants Bank; Modification of payment to Tidewater Equipment and feasibility of plan | .1 Hours |

| | | | |
|---|---|---|---|
| DLA | 10/28/83 | Telephone conference with Trustee regarding confirmation of plan and rejection by Farmers & Merchants Bank | .2 Hours |
| DLA | 10/31/83 | Telephone conference with Randy Connell regarding Farmers & Merchants Bank objection and present value of equipment | .4 Hours |
| DLA | 11/01/83 | Telephone conference with Randy Connell regarding Bank's objection and a possible continuance of confirmation hearing | .3 Hours |
| DLA | 11/01/83 | Telephone conference with Trustee regarding valuation of Farmers & Merchants Bank's collateral and possible continuance | .1 Hours |
| DLA | 11/01/83 | Telephone conference with Randy Connell regarding continuance and negotiations on value and payment | .2 Hours |
| DLA | 11/01/83 | Tried to call Randy Connell for further negotiations – not in | .1 Hours |
| DLA | 11/02/83 | Telephone conference with Randy Connell regarding appraisal of equipment and setting up meeting with Mr. Moore for inspection of equipment | .1 Hours |
| DLA | 11/02/83 | Telephone conference with Mr. Moore regarding confirmation hearing, payment schedule and skidder repair | .1 Hours |
| DLA | 11/02/83 | Telephone conference with Trustee regarding incurring credit for skidder repair | .1 Hours |
| DLA | 11/02/83 | Telephone conference with Rex Smith – Smith Equipment regarding repair of skidder, priority of payment, incurring of credit and obtaining approval from Trustee | .2 Hours |
| DLA | 11/03/83 | Confirmation hearing – Plan confirmed | .4 Hours |
| DLA | 11/03/83 | Telephone conference with Mr. Moore concerning terms of plan, release of equipment and insurance | .2 Hours |
| LZD | 11/03/83 | Dictate itemization of attorneys' time and letter to Court | 2.7 Hours |
| | | TOTAL TIME | 13.9 Hours |

As reflected in Debtor's Chapter 13 Statement, the secured debts of Debtor total $307,812.67 and the unsecured debts total $5,022.88. Debtor's plan calls for Debtor to pay $1,628.00 per week to the Court's standing Chapter 13 trustee for distribution to Debtor's creditors. The plan is to run for a period of five years.

Debtor is self-employed as a trucker, and his Chapter 13 plan is designed to save his business assets so that he can continue as a trucker. The plan also is designed to save the residence of Debtor's mother, who pledged her residence to secure one of Debtor's debts.

## CONCLUSIONS OF LAW

Under section 330(a) of the Bankruptcy Code, the attorney for a debtor is entitled to reasonable compensation for actual and necessary services. Section 330(a) provides as follows:

(a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the time, the nature, the extent, and the value of such services and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

11 U.S.C.A. § 330(a) (West 1979).

As noted in the legislative history of section 330(a), compensation is to be reasonable, for actual, necessary services rendered, based on the time, the nature, the extent, and the value of the services rendered, and on the cost of comparable services other than in a bankruptcy case. H.R.Rep. No. 595, 95th Cong., 1st Sess. 329–30, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6286; S.Rep. No. 989, 95th Cong., 2d Sess. 40, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5826.

Section 331 of the Bankruptcy Code authorizes the Court to award attorney's fees on an interim basis during the pendency of a bankruptcy case. Section 331 provides as follows:

A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

11 U.S.C.A. § 331 (West 1979).

The legislative history of section 331 notes:

The court is authorized to allow and order disbursement to the applicant of compensation and reimbursement that is otherwise allowable under section 330. The only effect of this section is to remove any doubt that officers of the estate may apply for, and the court may approve, compensation and reimbursement during the case, instead of being required to wait until the end of the case, which in some instances, may be years. . . .

H.R.Rep. No. 595, 95th Cong., 1st Sess. 330, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5963, 6287; S.Rep. No. 989, 95th Cong., 2d Sess. 41–42, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5827–28.

How do sections 330(a) and 331 relate to attorney fee awards in Chapter 13 cases, which cases under the Bankruptcy Code may last up to five years? The sections apply to attorney fee awards in Chapter 13 cases and, therefore, authorize and govern such awards. 11 U.S.C.A. § 103 (West 1979). Congress, in enacting section 331, recognized that bankruptcy cases by their very nature are oftentimes drawn out over years, and that it simply was not fair for an attorney to wait until the end of a case to be awarded compensation pursuant to section 330(a).

A Chapter 13 case presents the very problem that Congress sought to address by enacting section 331. A Chapter 13 plan may last for as long as five years, 11 U.S.C.A. § 1322(c) (West 1979), and during the plan, the attorney for the debtor, as the attorney of record in the Chapter 13 case, is obligated to represent his client in the Chapter 13 case. Confirmation of the plan under section 1325, 11 U.S.C.A. § 1325 (West 1979), is not the last step in the case, and the attorney of record continues to represent the debtor's interest until the closing of the case pursuant to 11 U.S.C.A. § 350(a) (West 1979).

The Court thus concludes that the practice of this Court and other courts of awarding attorney's fees upon confirmation of a debtor's Chapter 13 plan is an exercise of the authority in section 331 to award interim compensation. In reaching this conclusion, the Court has considered section

1326(a)(1) of the Bankruptcy Code, which provides:

(a) Before or at the time of each payment to creditors under the plan, there shall be paid—

(1) any unpaid claim of the kind specified in section 507(a)(1) of this title;

11 U.S.C.A. § 1326(a)(1) (West 1979).

Thus, section 1326(a)(1) provides that section 507(a)(1) claims must be paid before or at the time of payment to creditors under the plan. The practice in this Court since the effective date of the Bankruptcy Code has been to pay attorney fee awards in Chapter 13 cases before commencing any distribution to creditors, and this practice appears to be based upon the mistaken belief that section 1326 requires that treatment.

Section 507(a)(1) provides as follows:

(a) The following expenses and claims have priority in the following order:

(1) First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.

11 U.S.C.A. § 507(a)(1) (West 1979).

Thus, the administrative expenses described in section 503(b) are given the first priority in the distribution scheme of section 507. Section 503(b) provides as follows:

(b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

(B) any tax—

(i) incurred by the estate, except a tax of a kind specified in section 507(a)(6) of this title; or

(ii) attributable to an excessive allowance of a tentative carryback adjustment that the estate received, whether the taxable year to which such adjustment relates ended before or after the commencement of the case; and

(C) any fine, penalty, or reduction in credit, relating to a tax of a kind specified in subparagraph (B) of this paragraph;

(2) compensation and reimbursement awarded under section 330 of this title;

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection incurred by—

(A) a creditor that files a petition under section 303 of this title;

(B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;

(C) a creditor in connection with the prosecution of a criminal offense relating to the case, or to the business or property of the debtor;

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title; or

(E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian;

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;

(5) reasonable compensation for services rendered by an indenture trustee in making a substantial contribution in a case under chapter 9 or 11 of this title, based on the time, the nature,

the extent, and the value of such services, and the cost of comparable services other than in a case under this title; and

(6) the fees and mileage payable under chapter 119 of title 28.

11 U.S.C.A. § 503(b) (West 1979).

Under section 503(b)(2), compensation awarded under section 330 is to be paid as a priority. This is reasonable because Congress, in enacting the Bankruptcy Code, had as one of its stated intentions to insure that competent attorneys would practice in the bankruptcy area, and by giving them a priority of payment at the conclusion of a case, an attorney would have some comfort that he would be compensated for his services. Section 503(b) does not list interim compensation under section 331 as an administrative expense, and this is logical because interim compensation is awarded during the pendency of a case. Had Congress intended for interim compensation in Chapter 13 cases to be handled differently than in Chapter 7 and Chapter 11 cases, it easily could have said so. Since interim compensation is not included within section 503(b), the Court concludes that Congress intended for all interim compensation to be controlled by section 331. Section 331 specifically provides that "the court may allow and disburse" interim compensation, and the Court concludes that such compensation is to be awarded and paid upon the exercise of the Court's sound judicial discretion.

In conclusion, the Court finds that an award of compensation to an attorney in a Chapter 13 case, upon confirmation of the plan, is interim compensation, which is subject to the sound judicial discretion of this Court as a court of equity.

■ With the foregoing in mind, the Court now will turn to the application before it. In accordance with the decision of the United States District Court for the Middle District of Georgia in *ITT Industrial Credit Co. v. Scarboro* (*In re Scarboro*), 13 B.R. 439, 8 Bankr.Ct.Dec. 72, 4 Collier Bankr.Cas.2d 1222 (M.D.Ga.1981), this Court must follow a three-step procedure in awarding attorney's fees. This procedure involves determining the time spent and services rendered by the attorney requesting the award, determining the reasonable value of those services, and discussing how each of the twelve factors of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), affected the award of the Court.

The Court finds that the itemization of Mr. Dozier discloses 13.9 hours of actual and necessary services rendered by Mr. Dozier and Mr. Akin in the case. A breakdown of the itemization reveals that Mr. Dozier has 8.5 hours in the case and Mr. Akin has 5.4 hours. The Court finds the value of these services to be $1,600.00. The Court further finds that this award is reasonable compensation for actual, necessary services rendered in this case based on the time, the nature, the extent, and the value of such services and the cost of comparable services other than in a case under the Bankruptcy Code. In making its award, the Court considered each of the following twelve factors in the following manner:

(1) The time and labor required—
The time shown on Mr. Dozier's itemization is 13.9 hours. Most of the services rendered involve negotiations with secured creditors, conferences with Debtor, and conferences with the standing Chapter 13 trustee. The itemization reveals a large number of telephone conferences.

(2) The novelty and difficulty of the questions—
From a review of the file, it is apparent that, other than the size of the estate, this is a relatively normal Chapter 13 case. The plan, while somewhat complex, did not present any difficult or unique questions of law. The case did involve difficult negotiations.

(3) The skill requisite to perform the legal services properly—
Since no difficult legal questions were presented by this case, the skill requisite to perform the legal services herein is not extraordinary. It is noted that skill in negotiation appears to be the primary skill required by this case, and

the Court notes the skill of Mr. Dozier and Mr. Akin in negotiations.

(4) The preclusion of other employment due to acceptance of this case—

The fact that only 13.9 hours have been devoted to this case demonstrates that no serious preclusion of other employment has occurred.

(5) The customary fee—

The Court customarily awards fees that range from $50.00 per hour to $130.00 per hour, depending upon the experience and skill of the attorney. The Court also recognizes that the difficulty of a case must be considered in determining what is reasonable compensation under the Bankruptcy Code.

(6) Whether the fee is fixed or contingent—

The fee is neither truly fixed nor contingent, but possesses some characteristics of both. It is contingent upon the debtor's performance under the plan, and it is fixed by the Court because of the Congressional mandate that compensation paid from bankruptcy estates be subject to court supervision.

(7) Time limitations imposed by the debtor or other circumstances—

The Court is aware that time was a factor in this case and that counsel had to act expeditiously. Mr. Dozier and Mr. Akin are entitled to be compensated for this.

(8) The amount involved and the results obtained—

This is one of the major factors in any award, as it necessarily goes to the value of the attorney services to a debtor. In this case, the Chapter 13 plan deals with approximately $300,-000.00 in debt, which is much more than the sum dealt with in the usual Chapter 13 case. If Debtor successfully completes his plan, then a valuable service will have been rendered to Debtor by Mr. Dozier and Mr. Akin, but if he is unsuccessful, then the service may have been of little value. Only through the consideration of interim fee requests and a final fee application, filed shortly before the conclusion of Debtor's plan, can the Court fairly and accurately pass upon Mr. Dozier and Mr. Akin's compensation.

(9) The experience, reputation, and ability of counsel—

Mr. Dozier is a capable attorney with a great deal of experience in Chapter 13 practice. He has a good reputation with the Court and has the ability to ably represent Debtor. Mr. Akin is a capable attorney, but he does not possess much experience in the legal practice since he is a young attorney. While Mr. Akin has a good reputation with the Court, his reputation is still being shaped because of the few years he has practiced before the Court.

(10) The "undesirability" of the case—

This factor is not applicable in this case.

(11) The nature and length of the professional relationship with Debtor—

This factor is not applicable in this case.

(12) Awards in similar cases—

The Court strives to be consistent in the awards it makes in Chapter 13 cases, but it also recognizes that each case presents its own considerations. The major considerations for determining a fee award are the time involved, the ability of the attorney, the amount involved, and the results obtained.

In its consideration of this factor of the *Johnson* factors, the Court has considered two similar cases. In *In re Moncrief,* No. 80–01214–Mac (Bankr.M. D.Ga. April 20, 1981), Mr. Dozier was awarded a fee of $3,000.00 for 35.8 hours of attorney services. In *In re Hatcher,* No. 81–50278–Mac (Bankr.M. D.Ga.1982), Mr. Dozier was awarded a fee of $5,000.00 for 50.4 hours of attorney services. In this case, the Court notes that the legal difficulties and opposition was not near as great as in the *Moncrief* and *Hatcher* cases.

## DISCUSSION

█ Awards of attorney's fees must be handled on a case-by-case basis. Each award depends on the facts and legal issues in the case, and each case necessarily requires that the twelve factors of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974) be given different weight. Certain factors, such as time spent or the ability of the attorney involved, will always be important, but each of the factors that the Court is required to consider are dependent to a certain extent on the others, and no single factor can always determine the fee awarded. The Court must consider the interplay of all the factors and their relative weight in each case to arrive at the value of the attorney services in a case.

█ In this case, Mr. Dozier and Mr. Akin were not presented with difficult and novel questions of law and were not presented with difficult litigation. Most of the attorney time was spent in negotiations and, in fact, 2.7 hours of Mr. Dozier's time was spent in dictating his itemization of attorney time and the brief filed in support thereof.

This case deals with approximately $300,000.00 in debt, which is considerably more than is found in the average Chapter 13 case. Mr. Dozier is entitled to be compensated for this, but whether Debtor will be discharged from his debts can only be determined at the end of the case.

As stated above, the Court is of the opinion that Mr. Dozier's application must be treated as an interim fee application, and this will allow him to file additional interim fee applications as additional services are rendered during the pendency of this Chapter 13 case. Should Mr. Dozier deem it appropriate, he may file a final fee application under section 330 shortly before Debtor's completion of the Chapter 13 plan.

Mr. Dozier has spent 8.5 hours of attorney time in the case, and an award of $100.00 per hour would be $850.00. Mr. Akin has spent 5.4 hours of attorney time, and an award of $60.00 per hour would be $324.00. On strictly a time basis, the total

award would be $1,174.00. The Court is of the opinion that the facts in this case warrant a greater award, and the Court is of the opinion that an award of $1,600.00 will result in reasonable compensation for necessary services rendered.

Since distribution of an award is subject to the judicial discretion of the Court, the Court will authorize disbursement of the award to Mr. Dozier at the rate of $200.00 per month. This will pay the Court's award in eight months and also will allow payment to creditors to begin under Debtor's confirmed plan.