ELECTRONIC CITATION:  2007 FED App. 0001P (6th Cir.)
File Name:  07b0001p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re:   DALE EUGENE WILLIAMS AND<br>          TRACY RENEE WILLIAMS, | ) | |
| | ) | |
| Debtors. | ) | No. 06-8027 |
| _____ | ) | |
| | ) | |
| | ) | |
| WILLIAM P. BRINGMAN, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Eastern Division.
No. 05-68109.

Submitted:  November 8, 2006

Decided and Filed:  January 9, 2007

Before: AUG, GREGG, and SCOTT, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ON BRIEF:**  William Paul Bringman, Fredericktown, Ohio, for Appellant.

---

**OPINION**

---

JAMES D. GREGG, Bankruptcy Appellate Panel Judge. William P. Bringman ("Appellant"), counsel for the chapter 7 debtors, appeals the bankruptcy court's order denying his motion for reconsideration of his fee application, and reducing his requested attorney's fees to the presumptive, or "no look," fee for chapter 7 cases filed in the Northern District of Ohio prior to October 17, 2005.[1] For the reasons that follow, the bankruptcy court's order is REVERSED and REMANDED.

## I. ISSUE ON APPEAL

Whether the bankruptcy court abused its discretion by failing to conduct a lodestar analysis when reviewing the Appellant's fee application.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the Panel. A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). The bankruptcy court's order regarding attorney compensation is a final order. *See Boddy v. United States Bankruptcy Court (In re Boddy)*, 950 F.2d 334, 336 (6th Cir. 1991). A bankruptcy court's award of fees will not be reversed unless there has been an abuse of discretion. *Id.*

"An abuse of discretion is defined as a 'definite and firm conviction that the [court below] committed a clear error of judgment.' The question is not how the reviewing court would have

---

[1] Because the Debtor's bankruptcy case was filed before the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), all references to the Bankruptcy Code in this opinion are to the pre-BAPCPA version. *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 1501(b)(1), 119 Stat. 23, 216 (stating that, unless otherwise provided, the amendments do not apply to cases commenced under title 11 before the effective date of BAPCPA).

ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Mayor & City Council v. W. Va. (In re Eagle-Picher Indus., Inc.)*, 285 F.3d 522, 529 (6th Cir. 2002). The bankruptcy court's decision, under this standard, will only be disturbed if it "relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Gary's Elec. Serv. Co.*, 340 F.3d at 378 (citing *Blue Cross & Blue Shield Mut. v. Blue Cross & Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir. 1997)).

## III. FACTS

On October 13, 2005, the Appellant filed a chapter 7 petition on behalf of the debtors. On October 29, 2005, the Appellant filed a disclosure of compensation, the "Rule 2016(b) Disclosure," which stated that he received $850.00 prior to commencement of the case and that "[i]f additional services [were] needed after the creditors' meeting such as dealing with the trustee on additional information or disposition of assets or with a creditor such as in an adversary proceeding, the service will be rendered at the rate of $175.00 per hour subject to court approval." (Appendix at 2.) At the meeting of creditors, the trustee assigned to the case stated that he was considering referring the matter to the United States Trustee for possible conversion to a chapter 13 case. As a result, the chapter 7 trustee requested additional documentation regarding the debtors' expenses and income.

On January 10, 2006, the Appellant filed his "Motion on Attorney Fees" seeking an additional $1,083.32 in fees (in addition to the $850.00 paid prior to commencement of the case) and $252.72 in expenses. The bankruptcy court reduced the Appellant's compensation to $850.00 and ordered that any amount already paid in excess be disgorged. The Appellant then moved for rehearing and a hearing was held before the bankruptcy court on April 24, 2006. The court denied the Appellant's motion for rehearing and allowed the application for fees in the amount of $1,102.72 - - $850.00 in attorney's fees and $252.72 in expenses. The Appellant was again ordered to disgorge any compensation received in excess of $850.00. He then filed this timely appeal.[2]

---

[2] No other party appeared in this appeal. Therefore, there is no Appellee in the caption above.

## IV. DISCUSSION

11 U.S.C. § 330 provides that professionals may be awarded "reasonable compensation for actual, necessary services rendered . . . ." The Appellant contends that the bankruptcy court erred by not using the "lodestar" method to evaluate his fee application. In *Boddy v. United States Bankruptcy Court (In re Boddy)*, 950 F.2d 334 (6th Cir. 1991), the Sixth Circuit Court of Appeals mandated that the lodestar method be used to calculate fees in bankruptcy cases. *Boddy* controls the result of this appeal.

In *Boddy*, the chapter 13 debtors' attorneys sought interim compensation of $1,156.00. Relying on its practice that a maximum attorney's fee of $650.00 for legal services is "normal and customary" for a chapter 13 case, the bankruptcy court only awarded the law firm $300.00 in interim compensation. On appeal, the Sixth Circuit held that the bankruptcy court abused its discretion because it applied an improper legal standard, the "normal and customary" standard, rather than calculating the lodestar amount. *Boddy*, 950 F.2d at 337.

The lodestar amount is calculated by multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended. *Boddy*, 960 F.2d at 337. The bankruptcy court also may, in its discretion, consider other factors such as the novelty and difficulty of the issues, special skills of counsel, and the typical compensation, "as long as it expressly discusses these factors in light of the reasonable hours actually worked and a reasonable hourly rate." *Id*. at 338. However, such factors may be duplicative if the court first determines the lodestar amount "because the lodestar presumably subsumes all of these factors in its analysis of the *reasonable* hourly rate and the *reasonable* hours worked." *Id*. (emphasis in original) (citing *Blum v. Stenson*, 465 U.S. 886, 898-900, 104 S. Ct. 1541, 1549 (1984)).

The starting point in the lodestar analysis is to determine a reasonable hourly rate. A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11, 104 S. Ct. 1541, 1547 n.11 (1984). The next step in the analysis is to determine the lawyer's reasonable hours. *Norman v. Housing Authority*, 836 F.2d 1292, 1301 (11th Cir. 1988). If the court disallows hours, it must explain which hours are disallowed and show why an award of these hours would be improper. *Id.* at 1304. "While the burden is on the applicant to

justify a fee request, the bankruptcy court must expressly discuss the amounts that are not supported by the application and provide a reasoning to support the court's decision." *Sadin v. United States Trustee (In re Blain)*, No. 94-CV-74718, 1995 WL 871180, at *3 (E.D. Mich. July 31, 1995).

Many districts have established standardized attorney's fees for routine bankruptcy cases. These standardized fees are commonly referred to as presumptive, "fixed," "flat," or "no look" fees. These standard fees allow attorney's fees without requiring a detailed fee application in the absence of an objection.[3] *See* Keith M. Lundin, *Chapter 13 Bankruptcy* § 294.1 (3d ed. 2002 and Supp. 2004). In the Northern District of Ohio, the presumptive fee for a chapter 7 case filed prior to October 17, 2005 was $850.00. (Appendix at 10). This presumptive fee included "normal, ordinary, and fundamental services of the chapter 7 process that is provided to a typical debtor." (Appendix at 10.) "Such services usually include . . . pre-bankruptcy consultation, schedule preparation, representation of debtor at the meeting of creditors, reaffirmation agreement review, and other similar tasks." (Appendix at 10.)

On Appellant's original motion for attorney's fees, the bankruptcy court found:

> [Appellant] cannot establish the reasonableness of the $1,933.32 fee. Simply because an attorney expends a certain amount of time on an issue does not mean that the time spent is reasonable. If the facts and circumstances of the case do not merit the time expended, the fee is not reasonable. In this case, the fee requested is not reasonable in light of the uncomplicated nature of Debtor's case. This is a simple case involving two secured creditors, four unsecured creditors . . . . [Appellant]'s billing detail describes activities that are all normal, fundamental chapter 7 services . . . .

---

[3] A growing number of bankruptcy courts have adopted and implemented "no look" or presumptive fees, most commonly in chapter 13 cases, but also in chapter 7 cases. *See* Hon. David S. Kennedy et al., *Attorney Compensation in Chapter 13 Cases and Related Matters*, 13 J. Bankr. L. & Prac. 6 Art. 1 (2004); *In re Geraci*, 138 F.3d 314 (7th Cir. 1998) (establishing presumptive fees in chapter 7 cases permissible); *In re Murray*, 330 B.R. 732 (Bankr. E.D. Wis. 2005) (discussing district's flat fee of $700 to $800 for routine chapter 7 cases). The Panel recognizes that this type of standardization, or uniform fee guideline, promotes efficiency by relieving the courts of the administrative burden of reviewing numerous attorney's fee applications; encourages predictability and efficiency for all involved in a chapter 7 or 13 case; and saves time for the court, trustees and the attorneys who represent debtors. The Panel also believes that "no look" fees are permissible and should be encouraged in appropriate circumstances. *See Boddy*, 950 F.2d at 338 ("[W]e do not hold that the bankruptcy court can never consider the 'normal and customary' services rendered . . . ."); *see also, Boone v. Derham-Burk (In re Eliapo)*, 2006 WL 3262497 (9th Cir. 2006) (approving issuance of and reliance upon presumptive guideline fees for routine services in chapter 13 cases); *In re Cahill*, 428 F.3d 536, 541 (5th Cir. 2005) (approving the use of a "precalculated lodestar" as a basis for awarding attorney's fees in "typical" chapter 13 cases); *In re Kindhart*, 160 F.3d 1176 (7th Cir. 1998) (approving use of presumptive fees in routine cases).

> It appears to the court that the compensation paid or agreed to be paid to [Appellant] exceeds the reasonable value because only normal and fundamental services were necessary in this case.

(Appendix at 10.) (citation omitted.)

In denying Appellant's motion for reconsideration, the bankruptcy court stated:

> While the detail given in the motion and at hearing illuminated the specifics of, and the reasons for, the work, it did not change the underlying fact: the services were in the range of a routine Chapter 7 case. Counsel responded to the trustee's request for an explanation of Debtors' present and anticipated income and expenses. The request was not novel or unforeseeable, nor did it require legal research or result in hearing before the Court.

> As discussed in the previous order, *the Court imposes a presumptive fee in routine Chapter 7 cases*. The Court declines to allow the presumptive fee to exclude responding to requests from the trustee, particularly when the request is within the spectrum of what can be expected.

(Appendix at 16.) (Emphasis supplied.)

While the bankruptcy court discussed some of the factors which are subsumed in the lodestar analysis, such as the novelty and difficulty of the issues, it did not *expressly* calculate the lodestar amount by using the Sixth Circuit mandated methodology. This failure is legally erroneous. "At a minimum . . . the bankruptcy courts must expressly calculate the lodestar amount when determining reasonable fees." *Boddy*, 950 F.2d at 338. The bankruptcy court did not determine the Appellant's reasonable hourly rate. Nor did the court explain which hours detailed in the Appellant's fee application were disallowed and why. The court focused instead on whether the tasks completed were above and beyond what it expected to be included in the presumptive fee. By applying this improper legal standard, the bankruptcy court abused its discretion. *Boddy*, 950 F.2d at 337. After the bankruptcy court conducts a lodestar analysis consistent with *Boddy,* the fee award may be lesser or greater than the presumptive fee.

Based upon its review of the Appendix, the Panel believes that there are a host of factual and legal issues which may first be addressed by the bankruptcy court. For example, the bankruptcy court may consider whether the Appellant's "Motion on Attorney's Fees," in which the Appellant

itemized his time and summarized his services, adequately complies with the content and specificity requirements imposed by Federal Rule of Bankruptcy 2016, the bankruptcy court's General Order No. 93-1 Guidelines for Compensation and Expense Reimbursement of Professionals, and any other applicable local rules. *See e.g. Solomon v. Wein (In re Huhn)*, 145 B.R. 872, 875 (W.D. Mich. 1992).[4] The bankruptcy court should first determine whether noncompliance may result in a denial, in whole or in part, of the Appellant's requested fees.

The bankruptcy court also may consider the proposed *source* of the additional requested attorney's fees. The record before the Panel does not state the proposed source of the fees. The Appellant failed to respond to question number three, "[t]he source of compensation *to be paid* to me is . . . ." (emphasis supplied) on his Disclosure of Compensation of Attorney for Debtor. (Appendix at 2.) The Appellant may be requesting fees directly from the Debtors, and not the bankruptcy estate.[5] This is unclear. If the Appellant is seeking fees from the estate, this is impermissible unless his employment was authorized by 11 U.S.C. § 327. *Lamie v. United States Trustee*, 540 U.S. 526, 529, 124 S. Ct. 1023, 1027 (2004).[6]

If the Appellant is seeking the payment of fees directly from the Debtors, the bankruptcy court may consider whether some, or all, of the fees are dischargeable. *See e.g. Rittenhouse v. Eisen*, 404 F.3d 395, 396-97 (6th Cir. 2005) (holding that prepetition legal services are dischargeable in bankruptcy, but debts for postpetition attorney fees are not); *In re Griffin*, 313 B.R. 757 (Bankr. N.D. Ill. 2004) (discussing whether chapter 7 debtor's counsel can collect fees from debtor postpetition without postpetition fee agreement).

---

[4] The Appellant's time keeping entries appear highly suspect. The entries are not kept in one-tenth hour increments as is customary, and as is required by the bankruptcy court's local guidelines under General Order No. 93-1 ¶ 8. Also, certain tasks are "lumped" together which is prohibited by General Order No. 93-1 ¶ 10. Further, the Appellant has billed for certain secretarial type office tasks in contravention of General Order No. 93-1 ¶ 13. The Panel leaves these problems to the bankruptcy court to address, that court being more familiar with the actual services performed. The bankruptcy court has had an opportunity to observe the job performance of the Appellant.

[5] The trustee advised the Case Manager of the Panel that the creditors of the estate would not be affected by this appeal. (Appendix at 20.)

[6] The record in the Appendix is silent whether the Appellant was appointed under § 327.

## V.   CONCLUSION

For the foregoing reasons, the bankruptcy court's order is REVERSED and REMANDED for the lodestar analysis required by *Boddy*.  The court may consider other relevant factors or issues pertaining to the fee request as well.